# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ROLF ANDERSEN,**                                    Chapter 7
    Debtor                        Case No. 09-14033-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**THE CADLE COMPANY AS GENERAL**
**PARTNER FOR D.A.N. JOINT VENTURE, L.P.,**
    Plaintiff
v.                                                     Adv. P. No. 11-1083
**ROLF ANDERSEN,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the "Defendant-Debtor's Motion to Dismiss Plaintiff's

Complaint to Revoke Discharge, or, Alternatively, to Amend His Answer." Rolf Andersen,

the Defendant (the "Defendant," the "Debtor," or "Andersen"), filed a Memorandum with

his Motion to Dismiss. The Plaintiff, D.A.N. Joint Venture, L.P. (the "Plaintiff"), filed

"Plaintiff's Memorandum in Opposition to Debtor's Motion to Dismiss."[1]  The Court

conducted a hearing on the Defendant's Motion to Dismiss and the Plaintiff's Opposition

on October 19, 2011 and took the matter under advisement.  The material facts necessary

to determine the Motion are not in dispute, and neither party requested an evidentiary

hearing.

The Motion to Dismiss requires this Court to consider the effect of a decision of the

United States Bankruptcy Appellate Panel for the First Circuit (the "BAP") on the deadlines

imposed by 11 U.S.C. § 727(e) because the BAP reversed a decision of this Court denying

a motion to reopen the Debtor's bankruptcy case well after the deadlines imposed by §

727(e)(1) and (2).  Because the Motion was filed after the Debtor filed his Answer and the

Plaintiff's Opposition, and because it is necessary to review the record of proceedings in

the case, in the adversary proceeding, and before the BAP, the Court shall treat the Motion

to Dismiss as a Motion for Summary Judgment.  *See* Fed. R. Civ. P. 12(d), made applicable

to this proceeding by Fed. R. Bankr. P. 7012(b).

The Court now makes its findings of fact and conclusions of law in accordance with

Fed. R. Bankr. P. 7052.

## II. BACKGROUND

The Debtor filed a voluntary Chapter 7 petition on May 1, 2009.  The Plaintiff alleges

---

[1] D.A.N. Joint Venture, L.P. stated in its Memorandum that it was and remains
the Plaintiff, although the Cadle Company, which was the general partner when its
judgment against the Debtor was obtained, has been replaced by Cadle Company of
Ohio, Inc.

2

that it holds a judgment against the Debtor, obtained on February 4, 1997, from the

Connecticut Superior Court, in Case No. 95-0553463-5, in the amount of $842,193.32 plus

interest in the sum of $290,169.14, attorneys' fees in the sum of $3,135.00, costs in the sum

of $448.13, and default interest in an unspecified amount.

Following the commencement of the Debtor's Chapter 7 case, the Court established

August 7, 2009 as the deadline for filing complaints objecting to the Debtor's discharge

under 11 U.S.C. § 727(a).  On July 2, 2009, the Plaintiff filed a "Motion for Examination of

the Debtor under Bankruptcy Rule 2004." *See* Fed. R. Bankr. P. 2004.[2]  In its Motion, it

stated:  "[o]n information and belief DJV has reason to believe that the Debtor has

transferred or hid assets in Interbrands, Inc., a co-debtor and a company in which the

Debtor has been President."  On July 6, 2009, the Court granted the Plaintiff's Motion for

---

[2] Fed. R. Bankr. P. 2004 provides in pertinent part:

(a) Examination on Motion. On motion of any party in interest, the court may order the examination of any entity.

(b) Scope of Examination. The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. . . .

(c) Compelling Attendance and Production of Documentary Evidence. The attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

Fed. R. Bankr.P. 2004(a), (b) and (c).

3

a Bankruptcy Rule 2004 examination.  The Plaintiff conducted the Debtor's Bankruptcy Rule 2004 examination before the entry of the Chapter 7 discharge.

Following the allowance of its Motion for an Examination under Bankruptcy Rule 2004, the Plaintiff did not file a motion to compel the Debtor to answer questions or produce documents.  It is undisputed that at the time of the Bankruptcy Rule 2004 examination, the Plaintiff had access to copies of the Debtor's income tax returns, which it could compare to the income disclosed by the Debtor on Schedule I-Current Income of Individual Debtor(s) and in his Statement of Financial Affairs.

On July 22, 2009, the Plaintiff filed an Assented to Motion to Extend the Time to Object to Discharge in which it requested an extension of the deadline for filing complaints under 11 U.S.C. § 727(a) until September 12, 2009 on grounds that the Debtor's examination pursuant to Fed. R. Bankr. P. 2004 had been rescheduled from July 29, 2009 to August 17, 2009.[3]  The Court granted the Plaintiff's Motion and extended the deadline to September 12, 2009.

On August 27, 2009, prior to the expiration of the deadline, the Plaintiff filed three motions for authority to conduct Bankruptcy Rule 2004 examinations of the Debtor's spouse, accountants and Foxwoods Casino.  The Court granted the motions on September 1, 2009.

---

[3] In its Motion, the Plaintiff noted that the § 341(a) meeting of creditors was held on June 12, 2009 and the deadline for § 727 complaints was August 11, 2009.  In fact, the Court first scheduled the § 341(a) meeting for June 8, 2009 and the deadline for filing complaints under 11 U.S.C. § 727 was August 7, 2009.  *See* Fed. R. Bankr. P. 4004.

4

On September 15, 2009, three days after the expiration of the deadline and in the absence of any complaints filed under 11 U.S.C. § 727(a) by the Plaintiff, the Chapter 7 Trustee or any creditors, the Court entered the discharge. On the same day the discharge entered, the Plaintiff filed an "Expedited and Verified Motion to Extend the Time to Object to Debtor's Discharge." In its Motion to Extend Time, the Plaintiff stated: "[w]hile this Motion was being drafted the Debtor's Discharge [sic] entered. The Movant asks that the discharge be revoked until the authorized discovery is concluded and the Movant learns whether there is [sic] sufficient facts to support a claim pursuant to 11 USC § 727 (a)(3)(4) [sic]." The Court denied the Plaintiff's Motion on September 15, 2009, stating:

> Pursuant to the Assented to Motion to Extend the Time to Object to Debtor's Discharge, this Court extended the time for the creditor to file a complaint under 11 U.S.C. § 727 until September 12, 2009. Movant failed to request a further extension of the time to file a complaint under 11 U.S.C. § 727 on or before September 12, 2009. Accordingly, the Expedited Motion is untimely. Pursuant to Fed. R. Bankr. P. 4004(b) and Fed. R. Bankr. P. 9006(b)(3), the Motion is denied.

On September 30, 2009, the Court discharged the Chapter 7 Trustee, who had filed a Report of No Distribution, and closed the Debtor's Chapter 7 case. The Plaintiff did not appeal the Court's order of September 15, 2009, denying its Expedited and Verified Motion to Extend the Time to Object to Debtor's Discharge.

On October 9, 2009, the Plaintiff filed a Motion to Compel the Deposition of Debtor's Spouse and Debtor's Accountant, which the Court denied on September 26, 2009, because the Debtor's case had been closed. Thereafter, on November 3, 2009, the Plaintiff and the Chapter 7 Trustee filed a "Joint Motion for Entry of Order Reopening Case." In their

Motion, the parties did not specifically reference 11 U.S.C. § 727(d)(1).[4]  The Debtor filed

---

[4] The parties represented the following in the motion to reopen:

On August 24, 2009, the Creditor conducted the Rule 2004 Examination of the Debtor (the "Debtor's Examination"). During the Debtor's Examination the Creditor learned that the Debtor's gross income for 2008 exceeded $10 million and his gross income in 2007 exceeded $15 million.

During the Debtor's Examination, the Debtor indicated that almost all of his income in 2007 and 2008 came from gambling winnings and almost all of these winnings were offset by gambling losses.

At the conclusion of the Debtor's Examination, the Debtor agreed to supplement his response to the document request contained in the Rule 2004 Examination subpoena by providing records concerning his gambling gains and losses in 2009.

On September 1, 2009, this Court entered Orders allowing the Creditor's Motion to Take Rule 2004 Examinations of the Debtor's spouse and the Debtor's accountant.

On September 30, 2009, this Court entered an Order closing this case (the "Closing Date").

As of the Closing Date counsel to the Creditor was waiting to hear from counsel to the Debtor concerning convenient dates for the Rule 2004 Examinations of the Debtor's spouse and his accountant.

The Debtor's counsel has taken the position that because the case is closed the Debtor's wife and his accountant no longer have an obligation to comply with the subpoena issued pursuant to the approved Rule 2004 Motion. The Creditor moved to compel compliance with the Court's previous orders. The Motion to Compel was denied because the case was closed.

On October 29, 2009, counsel to the Creditor spoke with the Trustee and advised him of the Debtor's testimony concerning his gross income in 2007 and 2008.

.

The Trustee notes that notwithstanding this testimony, the income

an Opposition[5] and the Court heard the Motion on January 6, 2010. At that time, the Court

continued the hearing until February 10, 2010. The Court permitted the Plaintiff to take one

deposition of the Debtor's accountant and ordered the Plaintiff to report to the Court on

February 10, 2010. The parties moved to extend the date of the hearing several times. On

March 9, 2010, the Trustee withdrew his support for the Joint Motion, stating:

> reported by the Debtor in response to Question 1 of his Statement of
> Financial Affairs indicates that the Debtor's gross income in 2007 was
> $37,675.00 and his gross income in 2008 was $29,750.00.
>
> Question 8 of the Debtor's Statement of Financial Affairs which asks about
> the extent of certain losses suffered by the Debtor within one year of the
> Petition Date, including gambling losses. The Debtor's response to
> Question 8 was: "None".
>
> Give [sic] the above, the Trustee and the Creditor request that this Court
> enter an Order reopening this case so that the Debtor may comply with
> supplementation of the documents required by his Rule 2004 subpoena,
> the Creditor may conduct the Rule 2004 Examinations authorized by this
> Court of the Debtor's spouse and accountant and the Trustee may further
> investigate the financial affairs of the Debtor.

This Court notes that the Debtor's testimony about his gross income at his Bankruptcy
Rule 2004 examination, which took place before the expiration of the deadline for filing
complaints under 11 U.S.C. § 727, was inconsistent with his answer to Question 1 of his
Statement of Financial Affairs.

[5] In his Opposition, the Debtor stated in part the following:

The Debtor does not object to entry of an order reopening the case in order
for the Debtor to correct certain inadvertent mistakes that were made in
the Statement of Financial Affairs that was filed in this case and to be
questioned thereon.

The Debtor objects to any order reopening the case that resurrects the
orders allowing the Rule 2004 Motions without condition. The Debtor's
discharge renders the stated purposes for those Motions largely irrelevant.

> Based on the outcome of the Rule 2004 Examination, the documents provided by the Debtor and the Debtor's response to the Trustee's questions, the Trustee has no reason to believe that there are any undisclosed assets which would be available for him to liquidate.

> Although there were some errors or misstatements in the schedules to the Debtor's bankruptcy petition and in the Statement of Financial Affairs and although some of the Debtor's testimony during his Rule 2004 Examination might be open to more than one interpretation, the Trustee does not believe that an adversary complaint seeking the revocation of the Debtor's discharge would be successful.

The Court granted the Chapter 7 Trustee's Motion for Authority to Withdraw as One of the Moving Parties in the Pending Joint Motion to Reopen Case. On March 10, 2010, the Court denied the Plaintiff's motion to reopen.

The Plaintiff appealed this Court's denial of the motion to reopen the Debtor's case to the United States Bankruptcy Appellate Panel for the First Circuit. On January 20, 2011, the panel reversed this Court's order of March 10, 2010. *See* The Cadle Co., General Partner of D.A.N. Joint Venture v. Andersen (In re Andersen), No. MB 10-015, 2011 WL 4571900 (B.A.P. 1st Cir. Jan. 20, 2011). In its decision, the BAP stated: "The [Plaintiff] appeals from the bankruptcy court's March 10, 2010 order  . . . denying its motion to reopen the bankruptcy case  . . . so that it could file a complaint to revoke his discharge *under § 727(d)(1)*." Id. at *1 (emphasis supplied, footnote omitted). The BAP observed:

> From the record, it is clear that at the time the discharge entered, Cadle had concerns about the Debtor's financial condition based on its Rule 2004 examination of the Debtor and the documents he produced. For example, Cadle was concerned about discrepancies between the income reported in the Debtor's statement of financial affairs and what certain documents (e.g., tax returns) indicated. The record also shows, however, that it was not until after the accountant's Rule 2004 examination and the accompanying

8

production of documents that significant information surfaced about the financial relationship and flow of substantial amounts of money between IB, the allegedly defunct Interbrands, and Bellboy. In the face of potentially significant newly discovered post-discharge evidence, the bankruptcy court should have allowed the bankruptcy case to be reopened to allow Cadle to pursue a § 727(d)(1) revocation of discharge proceeding.

However, the reopening of a case is a ministerial act which allows the file to be retrieved so the court can receive a new request for relief; the reopening, by itself, has no independent legal significance and determines nothing with respect to the merits of the relief to be requested. In re Haralambous, 257 B.R. 697, 698 (Bankr. D. Conn. 2001); *see also* Giddens v. Kreutzer (In re Kreutzer), 249 Fed. Appx. 727, 729 (10th Cir. 2007). Consequently, *the Panel makes no determination as to the merits of a potential revocation of discharge action, or whether such an action might be time-barred under the Bankruptcy Code.* The Panel simply holds that the bankruptcy court abused its discretion in declining to reopen the case to enable Cadle to pursue such an action.

In re Andersen, 2011 WL at 4571900 at *4-5 (emphasis supplied).  The BAP issued its

mandate on February 25, 2011.

On March 18, 2011, just over a year after this Court denied its motion to reopen, the

Plaintiff filed a two-count Complaint to Revoke Discharge pursuant to 11 U.S.C. § 727(d)(1)

(Count I) and 11 U.S.C. § 727(a)(6)(C) (Count II).   In support of Count II, the Plaintiff

alleged:

The Debtor was also asked [at his August 24, 2009 Rule 2004 examination] questions about a third entity on the Debtor's Schedule F, Bellboy Corporation ("Bellboy"). He testified that Bellboy was a wholesale liquor distributor that purchased goods from IB. When questioned further about debts owed to Bellboy, the Debtor refused to answer claiming that he was under a restraining order prohibiting discussion of the matter.

The Debtor filed his Answer on April 18, 2011.  The Court issued a Pretrial Order on May

13, 2011.  The parties filed a Motion to Extend Pretrial Order, seeking to extend the

deadlines set forth in the Court's Pretrial Order on grounds that the Plaintiff was required to conduct discovery in Scotland.  The Court granted the Motion to Extend on June 24, 2011.  The Debtor filed  his Motion to Dismiss on July 29, 2011.

## III. THE STATUTE

Section 727 of the Bankruptcy Code provides in pertinent part the following:

(a) The court shall grant the debtor a discharge, unless - - . . .

(6) the debtor has refused, in the case -- . . .

> (C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify; . . .

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if --

> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;  . . .

> (3) the debtor committed an act specified in subsection (a)(6) of this section;  . . .

(e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge--

> (1) under subsection (d)(1) of this section within one year after such discharge is granted; or

> (2) under subsection (d)(2) or (d)(3) of this section before the later of--

>> (A) one year after the granting of such discharge; and
>> (B) the date the case is closed.

10

11 U.S.C. § 727 (a)(6)(C), (d) and (e).

## IV. POSITIONS OF THE PARTIES

    A. <u>The Debtor</u>

The Debtor seeks to dismiss both counts of the Complaint under § 727(d)(1) and

(d)(3) as jurisdictionally time-barred pursuant to § 727(e)(1) and (e)(2), respectively, or

alternatively, for failure to state claims upon which relief may be granted.  Citing the BAP's

decision issued in conjunction with the Plaintiff's appeal, the Debtor contends that this

Court procedurally is barred from considering the Plaintiff's claims under § 727(d)(3)

because it failed to raise those claims either in this Court or before the BAP.   The

affirmative defenses the Debtor seeks to add, including lack of subject matter jurisdiction

under 11 U.S.C. § 727(e)(1) and (e)(2), are consistent with his asserted grounds for

dismissal.

The Debtor principally relies upon the decision of the United States Bankruptcy

Appellate Panel for the First Circuit in <u>Gonsalves v. Belice (In re Belice)</u>, No. 10-030, 2011

WL 4572003 (B.A.P. 1st Cir. March 7, 2011).  In that case, the BAP observed:

> The commencement of an action seeking the revocation of a discharge is
> subject to strict time limitations. As this Panel has previously explained, §
> 727(e)(1) is not "a mere statute of limitations, but an essential prerequisite to
> the proceeding." <u>Pelletier v. Donald (In re Donald)</u>, 240 B.R. 141, 146 (B.A.P.
> 1st Cir.1999) (citing 6 Lawrence P. King, et al., *Collier on Bankruptcy* ¶ 727.16
> at p. 727–72 (15th ed. rev.1999)). As such, a majority of courts have refused
> to apply the doctrine of equitable tolling to the deadline set forth in the
> statute. *See, e.g.*, <u>Dery v. Rosenberg</u>, Case No. 02–73274, 2003 WL 21919267
> (E.D. Mich. Jan. 13, 2003); <u>(Gargula v. Lombard (In re Lombard)</u>, Case No.
> 10–3008, 2010 WL 3504130 (Bankr. W.D. Mo. Sept. 7, 2010); <u>Murrietta v. Fehrs
> (In re Fehrs)</u>, 391 B.R. 53, 66–67 (Bankr. D. Idaho 2008); <u>Hadlock v. Dolliver</u>

11

(In re Dolliver), 255 B.R. 251, 254 (Bankr. D. Me. 2000); Bevis v. Bevis ( In re
Bevis), 242 B.R. 805, 812 (Bankr .D. N.H. 1999).

This Panel adopts the comprehensive analysis provided in the foregoing
opinions and agrees that because the deadline in § 727(e)(1) is firm and not
subject to equitable tolling, Gonsalves' request for relief under § 727(d) was
time-barred. Accordingly, the bankruptcy court's dismissal of the request for
revocation of discharge for failure to state a claim was harmless error and the
Panel will affirm the bankruptcy court, albeit on separate grounds.

In re Belice, 2011 WL 4572003 at *3-4 (footnote omitted).  Although the BAP in Belice, citing

Dwyer v. Peebles (In re Peebles), 224 B.R. 519 (Bankr. D. Mass.1998), observed that

"[c]ourts have ruled otherwise with respect to the doctrine's application to § 727(d)(2),

which is not implicated here, it unequivocally stated:

This statutory deadline to seek revocation of a discharge is in contrast to the
deadline to object to discharge set forth in Bankruptcy Rule 4004(a). The
Supreme Court has ruled that the latter deadline is not "jurisdictional" and
could be forfeited if a debtor fails to raise it in a pleading responsive to the
complaint. Kontrick v. Ryan, 540 U.S. 443 (2004). *Bankruptcy courts continue
to agree, post- Kontrick, that § 727(e) is jurisdictional*. *See, e.g.*, In re Fellheimer,
Case No. 03–33298, 2010 WL 4008461 (Bankr. E.D. Pa. Oct. 13, 2010); In re
Fehrs, 391 B.R. at 66–67.

2011 WL 452003 at *4 n.11 (emphasis supplied).

As for the Plaintiff's count under 11 U.S.C. § 727(d)(3) and its claim under §

727(a)(6)(C) to which the deadline under § 727(e)(2) pertains, the Debtor maintains that

Count II is also time barred.  He observes that the discharge entered on September 15, 2009,

that his case was closed on September 30, 2009, and that the Plaintiff's  Complaint was not

filed until March 18, 2011, well after the statutory deadline.  Distinguishing Dwyer v.

Peebles (In re Peebles), 224 B.R. 519 (Bankr. D. Mass. 1998), he asserts that the majority of

courts have adopted the position expressed in <u>Kartzman v. Abdelmassia (In re Abdelmassia)</u>, 362 B.R. 207 (Bankr. D.N.J. 2007). He also cites <u>Hadlock v. Dolliver (In re Dolliver)</u>, 255 B.R. 251 (Bankr. D. Me. 2000). Additionally, he argues that the doctrine of equitable tolling is inapplicable to the Plaintiff's claims under § 727(d)(3) because his Bankruptcy Rule 2004 examination preceded the entry of discharge and the original closing of the case and that in the exercise of its reasonable diligence the Plaintiff could have obtained a court order and sanctions for refusal to answer material questions but did not do so.

The Debtor also contends that pursuant to Fed. R. Civ. P. 12(b)(6) made applicable to this proceeding by Fed. R. Bankr. P. 7012(b), the Plaintiff has failed to state a claim upon which relief can be granted under 11 U.S.C. § 727(d)(1). He asserts that the Plaintiff cannot prove the following elements: "(1) the debtor obtained the discharge through fraud; (2) the creditor possessed no knowledge of the debtor's fraud prior to the granting of the discharge; and (3) the fraud, if known, would have resulted in denial of discharge under § 727(a)." *See* <u>Yules v. Gillis (In re Gillis)</u>, 403 B.R. 137, 144 (B.A.P. 2009). *See also* <u>The Cadle Co., General Partner of D.A.N. Joint Venture v. Andersen (In re Andersen)</u>, No. MB 10-015, 2011 WL 4571900 at *4 (B.A.P. 1st Cir. Jan. 20, 2011). The Debtor argues:

> It is clear on the record that Plaintiff had concerns about Debtor's financial condition prior to the issuing of the discharge and the initial closing of the case based on its Rule 2004 examination of the Debtor and the copies of the Debtor's tax returns that Plaintiff received in August; said tax returns stated gross earnings which contradicted the (net) income reported in the Debtor's statement of financial affairs. However, Plaintiff failed to request an extension of time to object to discharge before the deadline expired. As such,

13

Plaintiff cannot make the requisite showing that they did not know about the alleged fraud until after the discharge entered under element two. Plaintiff suspected enough to fight the discharge before it entered, at best, or to obtain an additional extension of the deadline for objecting to the discharge, at worst, and they did neither. Furthermore, and more importantly, Plaintiff cannot establish the third element that the entire discharge would not have been granted but for the debtor's alleged fraud.

The Debtor also argues that the Plaintiff cannot prove the requisite elements under § 727(a)(6)(C). He points to the lack of a court order for the Debtor to answer a particular question and the absence of a motion to compel.

B. The Plaintiff

The Plaintiff maintains that the timeliness and waiver arguments set forth in the Motion to Dismiss do not implicate the Court's subject matter jurisdiction as both are affirmative defenses which the Debtor failed to raise in his Answer. Specifically, the Plaintiff rejects the Debtor's jurisdictional argument under § 727(e) and his waiver argument relating to his failure to rely upon 11 U.S.C. § 727(d)(3) during the appeal. Alternatively, the Plaintiff argues that even if a statute of limitations defense could be recast as a subject-matter jurisdiction argument and properly raised by motion, it should be rejected as this Court's abuse of discretion in refusing to reopen the case prevented the Plaintiff from filing a complaint under 11 U.S.C. § 727(d)(1) within one year of the entry of the discharge. The Plaintiff maintains that "[d]uring the time that the erroneous denial of the Motion to Reopen was in effect, it was literally impossible for the Plaintiff to file its adversary complaint, since there was no open case in which to file it." The Plaintiff, emphasizing the absence of any likelihood of meaningful recourse in the absence of tolling,

14

distinguishes the cases cited by the Debtor because none involved a denial of a motion to reopen prior to the expiration of the one year period set forth in § 727(d)(1). The Plaintiff states that the fraud was uncovered in February of 2010, well before the one-year deadline imposed by § 727(d)(1), and urges the Court to subtract the period of time between March 10, 2009 and March 7, 2011 in calculating whether its Complaint is timely filed.

The Plaintiff further argues that this Court should reject the Debtor's subject matter jurisdiction argument with respect to Count II because the plain language of 11 U.S.C. § 727(e)(2) shows that it timely commenced its adversary proceeding, the Debtor refused to answer questions posed during his Bankruptcy Rule 2004 examination, and the decision of the BAP did not limit reopening to a § 727(d)(1) count. The Plaintiff rests its argument on the theory that when it filed its Complaint on March 18, 2011, the Debtor's bankruptcy case was open. It adds that equitable tolling is warranted.

In conjunction with its § 727(d)(3) claim, the Plaintiff argues that there is no requirement that a plaintiff file a motion to compel a response to a question before a plaintiff can institute a complaint under 11 U.S.C. § 727(a)(6)(C). The Plaintiff points to the Debtor's refusal to answer a question about a $500,000 debt owed to Bellboy Corporation because he was under a restraining order that prevented him from testifying about that corporation and the general goals and policies pertinent to Rule 2004 examinations, citing, *inter alai*, In re Table Talk, Inc., 51 B.R. 143, 145 (Bankr. D. Mass. 1985). Additionally, the Plaintiff asserts that there was no meaningful distinction in the BAP's decision to reverse this Court's order denying the motion to reopen for purposes of § 727(d)(1) and § 727(d)(3),

15

as it had referenced the Debtor's Bankruptcy Rule 2004 examination.[6]  It cites the language employed by the panel to the effect that "the reopening of a case, by itself, has no independent legal significance . . . ."  In re Andersen, 2011 WL 4571900 at *5.

The Plaintiff also requests that this Court deny the Debtor's Motion to Amend his Answer.  It argues that under Fed. R. Civ. P. 15(a)(2), made applicable to this proceeding by Fed. R. Bankr. P. 15, leave to amend should be freely given "when justice so requires," a circumstance notably absent in its view.  The Plaintiff points to the Debtor's disregard of his obligations as a debtor and his concealment of a felony conviction for money laundering.

**V. DISCUSSION**

A. Summary Judgment Standard

The summary judgment standard is well-known and needs little explication.  According to the United States Court of Appeals for the First Circuit:

> It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. See Fed.R.Civ.P. 56(c). As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality-say, affidavits or depositions-that support his position. When the summary judgment record is complete, all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant. This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record. . . .

---

[6] The Motion to Reopen contained no reference to the Debtor's refusal to answer any particular questions.

16

In re Kurak, 409 B.R. 259, 263–64 (Bankr.D.Mass. 2009), *aff'd,* South Point Inc. v. Agin, 433

B.R. 52 (D. Mass. 2010) (quoting Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st

Cir.1994)) (citations omitted, footnote omitted).

      B. Applicable Law and Analysis

      The court in Humphreys v. Stedham (In re Stedham), 327 B.R. 889 (Bankr. W.D.

Tenn. 2005), succinctly set forth the general parameters of a request for revocation of

discharge.  It stated:

> A proceeding to revoke a discharge must be initiated by filing an adversary
> complaint. Fed. R. Bankr. P. 7001. The party seeking revocation bears the
> burden of proof by a preponderance of the evidence. Buckeye Retirement Co
> v. Heil (In re Heil), 289 B.R. 897, 903 (Bankr. E.D. Tenn. 2003). "Revocation of
> a debtor's discharge is an extraordinary remedy, so § 727(d) is liberally
> construed in favor of the debtor and strictly construed against the party
> seeking revocation." Heil, 289 B.R. at 903.

In re Stedham, 327 B.R. at 897.  A party initiating an adversary proceeding under 11 U.S.C.

§ 727(d), must satisfy the applicable deadlines imposed by 11 U.S.C. § 727(e).  The United

States Bankruptcy Appellate Panel for the First Circuit in Gonsalves v. Belice (In re Belice),

No. 10-030, 2011 WL 4572003 (B.A.P. 1st Cir. March 7, 2011), unequivocally stated its view

about the deadlines set forth in § 727(e):  "Bankruptcy courts continue to agree, post-

Kontrick, that § 727(e) is jurisdictional." 2011 WL 452003 at *4 n.11 (citing In re Fellheimer,

Case No. 03–33298, 2010 WL 4008461 (Bankr. E.D. Pa. Oct. 13, 2010), and In re Fehrs, 391

B.R. 53, 66–67 (Bankr. D. Idaho 2008)).

      The majority of courts holds § 727(e) is a statute of repose, not a statute of

limitations, and that equitable tolling is inapplicable to statutes of repose.[7] *See* <u>DeAngelis</u>

<u>v. Taylor (In re Taylor)</u>, 449 B.R.686, 689 (Bankr. E. D. Pa. 2011) (citing, *inter alia*, <u>In re</u>

<u>Kohlhorst</u>, 2008 WL 2970391 at *3 (Bkrtcy. N.D. Ohio July 28, 2008); <u>Hadlock v. Dolliver (In</u>

<u>re Dolliver)</u>, 255 B.R. 251, 257 (Bankr. D. Me.2000); <u>Dahar v. Bevis (In re Bevis)</u>, 242 B.R. 805,

809 (Bankr. D. N.H. 1999); <u>Davis v. Johnson (In re Johnson)</u>, 187 B.R. 984, 988 (Bankr. S.D.

Cal. 1995); <u>Dery v. Rosenberg (In re Rosenberg)</u>, 2003 WL 21919267 at *10 (E.D. Mich.

Jan.13, 2003); <u>Kartzman v. Abdelmassia (In re Abdelmassia)</u>, 362 B.R. 207, 214 (Bankr. D.

N.J. 2007); <u>Apex Wholesale, Inc. v. Blanchard (In re Blanchard)</u>, 241 B.R. 461, 464 (Bankr.

S.D. Cal. 1999); and <u>In re Morris</u>, 2008 WL 819296 at *4 (Bankr. D. Kan. March 26, 2008)).

*But see* <u>Dwyer v. Peebles (In re Peebles)</u>, 224 B.R. 519, 522 (Bankr. D. Mass. 1998) (reading

equitable tolling into § 727(e)(2) by analogizing the time limit in § 727(e) to the time limits

in § 546(a) regarding a trustee's avoiding powers); <u>Caughey v. Succa (In re Succa)</u>, 125 B.R.

---

[7] According to the court in <u>Dahar v. Bevis (In re Bevis)</u>, 242 B.R. 805 (Bankr. D. N.H. 1999),

The Supreme Court has described the equitable tolling doctrine as follows:

> [T]hat where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."

<u>Holmberg v. Armbrecht</u>, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (quoting <u>Bailey v. Glover</u>, 88 U.S. 342, 21 Wall. 342, 22 L.Ed. 636 (1874)).

<u>In re Bevis</u>, 242 B.R. at 808.

168, 172 (Bankr. W.D. Tex.1991) (accord).  The latter two cases cases have been criticized,

particularly by the court in <u>Bevis</u>.  In that case, the court, in rejecting equitable tolling,

stated:

> The conclusion that equitable tolling is inapplicable to both §§ 727(e)(1) and
> (e)(2) is further supported by the notion that Bankruptcy Code provisions
> should be interpreted based upon their "plain meaning." *See* <u>United States
> v. Ron Pair Enters., Inc.</u>, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290
> (1989) ("The plain meaning of legislation should be conclusive, except in the
> 'rare cases [in which] the literal application of a statute will produce a result
> demonstrably at odds with the intentions of its drafters.' ") (quoting <u>Griffin
> v. Oceanic Contractors, Inc.</u>, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973
> (1982)). Section 727(e)(1) clearly states that a § 727(d)(1) action may be
> brought within one year after a debtor is granted a discharge, while §
> 727(e)(2) unambiguously limits the commencement of a § 727(d)(2) action to
> the same period, or the date the case is closed, whichever occurs later.
> Although words are subject to nuance, the meaning of this language appears
> clear: § 727(d)(1) and § 727(d)(2) actions must be brought within specific time
> periods. The use of equitable tolling in the context of either §§ 727(e)(1) or
> (e)(2) would eviscerate the plain meaning of such language. Moreover, the
> Supreme Court has recently stated that "[e]quitable tolling is not permissible
> where it is inconsistent with the text of the relevant statute." <u>United States v.
> Beggerly</u>, 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998).

<u>Bevis</u>, 242 B.R. at 810.[8]  The court added:

---

[8] *See also* <u>Pelletier v. Donald (In re Donald)</u>, 240 B.R. 141 (B.A.P. 1st Cir. 1999), in
which the panel stated:

> Section 727(e) of the Bankruptcy Code provides that a creditor may
> request revocation of a discharge under subsection (d)(1) of this section
> within one year after the discharge was granted. "This is not a mere
> statute of limitations, but an essential prerequisite to the proceeding." 6
> Lawrence P. King, et al., Collier on Bankruptcy ¶ 727.16 at p. 727–72 (15th
> ed. rev.1999), citing <u>In re Karras</u>, 165 B.R. 636 (N.D.Ill.1994). Furthermore,
> the one-year period is not tolled by the debtor's concealment of assets. <u>Id.</u>
> at 727–73. The Donalds' discharge was granted on February 22, 1996;
> therefore, Pelletier had to file his request for revocation of discharge
> within one year of that date.

19

A further problem associated with reading equitable tolling into either §§ 727(e)(1) or (e)(2) is the problematic uncertainty that such an approach would create. A discharge order should be imbued with a high degree of finality. *See* In re Edwards, 236 B.R. 124, 126–27 (Bankr. D.N.H. 1999); Buckstop Lure Co. v. Trost (In re Trost), 164 B.R. 740, 744 (Bankr. W.D. Mich.1994) ("The finality of a discharge order must be given special consideration."). The finality of a discharge order would be severely compromised, however, if §§ 727(e)(1) and (e)(2) are viewed as subject to equitable tolling. When equitable tolling is combined with §§ 727(e)(1) and (e)(2), discharge orders are vulnerable to attack many years subsequent to their issuance. Such an outcome is squarely at odds with the notion that finality should govern discharge orders. . . .

Foreclosing the availability of equitable tolling within the context of §§ 727(e)(1) and (e)(2) precludes the ability to revoke a debtor's discharge pursuant to § 727(d) after certain time periods pass, thus potentially allowing debtors to receive a discharge, and therefore a fresh start, despite clear indications of fraud. Although the Court recognizes the policy considerations at stake, it remains cognizant that its role is not to make public policy; legislation is the exclusive province of Congress. *See* Reynolds, 189 B.R. at 203. Thus, although the Court is troubled by the competing policy considerations implicated by this case, it ultimately must defer to the plain meaning of §§ 727(e)(1) and (e)(2), which appears to preclude the availability of equitable tolling and attaches greater significance to the need for finality with respect to discharge orders.

---

240 B.R. a 146-47 (footnote omitted).  The court added:

Pelletier did file his emergency motion to "reopen" debtors' discharge on February 24, 1997. However, Fed.R.Bankr.P. 7001(4) provides that a proceeding to object to or revoke a discharge must be filed as an adversary proceeding. Pelletier did not file an adversary proceeding on February 24; he did not file his complaint objecting to dischargeability and to discharge until June 5, 1997. He did so because the bankruptcy judge, although initially denying Pelletier's emergency motion, on reconsideration granted him until June 9, 1997 to file his complaint. In effect, the bankruptcy judge granted Pelletier an extension of time to file his complaint objecting to discharge and dischargeability. The panel believes that he did so in error.

Id. at 147.

Bevis, 242 B.R. at 810-11 (footnotes omitted). *Cf.* In re Commercial Fin. Servs., Inc., 294 B.R. 164 (Bankr. N.D. Ohio 2003) (discussing issue of whether 11 U.S.C. § 546 is a statute of limitations or a statute of repose).  The court in Bevis noted, however, that a trustee and creditors are not left without redress because a trustee may recover undisclosed property and the debtor may be subject to criminal action.  Id. at 811 n.3.

In sum,  all courts emphasize that the deadlines set forth in § 727(e) begin to run upon a fixed date, and not from the occurrence or discovery of an injury, consistent with a statute of repose. Moreover, Fed. R. Bankr. P. 9024 expressly provides that Fed. R. Civ. P. 60 is inapplicable to complaints to revoke a discharge in a Chapter 7 liquidation case. Rule 9024 provides that such complaints "may be filed only within the time allowed by § 727(e) of the Code."  In other words, there can be no relief from the discharge order for mistake, inadvertence, surprise, or excusable neglect.

The Plaintiff argues that this Court's erroneous order refusing to grant its motion to reopen prevented it from filing a complaint under § 727(d)(1) and (d)(3).  In other words, it argues that its Complaint is timely based on subtraction of the period of time between March 10, 2010, the date this Court refused to reopen the Debtor's case, and March 7, 2011, the date the Court reopened the Debtor's case pursuant to the mandate of the bankruptcy appellate panel.  In its view, it had no  procedural avenues other than the reopening of the case.  This Court disagrees for factual and legal reasons.

In In re Runkle, 333 B.R. 734 (Bankr. D.Md. 2005), the United States trustee filed a timely complaint to revoke the debtor's discharge before its motion to reopen the debtor's

Chapter 7 case was granted. The court observed: "The reopening of a bankruptcy case is not a jurisdictional prerequisite to invoking the 'arising under' jurisdiction of this Court of 28 U.S.C. § 1334(b). Furthermore, the complaint is deemed to have been filed upon the clerk of the court's receipt thereof." Id. at 736. In In re Ransom, No. 99-41389, 2000 WL 33712560 (Bankr. D. Idaho Mar. 30, 2000), the court reached the same result, relying in part on Menk v. Lapaglia (In re Menk), 241 B.R. 896 (B.A.P. 9th Cir. 1999). The court in Ransom stated:

> Whether the Court *may* reopen a bankruptcy case, however, is a different question than whether the Court *must* reopen a case as a jurisdictional prerequisite to its ability to entertain an action pursuant to Section 727(d). Does the Court's subject-matter jurisdiction to revoke a Chapter 7 discharge depend upon reopening the bankruptcy case?
>
> A bankruptcy court's subject-matter jurisdiction derives from Title 28 of the United States Code. Section 1334(a) grants the district courts original and exclusive jurisdiction over "all cases under title 11", while Section 1334(b) grants original but not exclusive jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b). Bankruptcy courts in general, and the Bankruptcy Court in this District in particular, assume jurisdiction over cases by reference from the district courts. 28 U.S.C. § 157(a); Amended General Order No. 38. Once a bankruptcy case has been referred, the bankruptcy court has "arising under" jurisdiction for "those proceedings that involve a cause of action created or determined by a statutory provision of title 11." Maitland v. Mitchell ( In re Harris Pine Mills), 44 F.3d 1431, 1435 (9th Cir.), *cert. denied*, 515 U.S. 1131 (1995). Because revocation of a Chapter 7 bankruptcy discharge is a remedy created solely by Section 727(d) of the Bankruptcy Code, an action requesting such relief falls squarely within a bankruptcy court's "arising under" jurisdiction. Once the Debtors' bankruptcy cases were filed, by operation of the statute and General Order, this Court acquired subject-matter jurisdiction over any action requesting the revocation of the Debtors' discharges.

In re Ransom, 2000 WL 33712560 at *2. The court added:

> The BAP's decision in Menk discusses in detail the ramifications of reopening a case on the bankruptcy court's jurisdiction; it is helpful here. In

22

Menk, the bankruptcy court reopened a bankruptcy case on request of a creditor, and then determined the creditor's claim was excepted from the debtor's discharge under Section 523(a). Interestingly, the debtor did not appeal the bankruptcy court's decision finding the creditor's claim nondischargeable. Rather, the debtor appealed the lower court's decision to reopen the bankruptcy case. Debtor's mistaken belief was that if the reopening was overturned, the bankruptcy court would have had no jurisdiction to render a decision in the dischargeability proceeding, thereby rendering it void.

The BAP makes clear that the bankruptcy court's jurisdiction over a civil proceeding is not dependent upon the existence of an open bankruptcy case. "The important point about § 1334 is that there is no explicit requirement that a 'case' be open under § 1334(a) for a court to act in a 'civil proceeding' under § 1334(b)." Menk, 241 B.R. at 904. The Panel explains:

> We have repeatedly held that the reopening of a closed bankruptcy case is a ministerial act that functions primarily to enable the file to be managed by the clerk as an active matter and that, by itself, lacks independent legal significance and determines nothing with respect to the merits of the case.

Id. at 913, citing DeVore v. Marshack (In re DeVore), 223 B.R. 193, 198 (9th Cir.B.A.P.1998); Abbott v. Daff (In re Abbott), 183 B.R. 198, 200 (9th Cir.B.A.P.1995); U.S. v. Germaine (In re Germaine), 152 B.R. 619, 624 (9th Cir.B.A.P.1993). Other courts have held that the closing of a bankruptcy case does not affect the court's jurisdiction to determine matters relevant to that case. See e.g., Koehler v. Grant, 213 B.R. 567, 569–70 (8th Cir.B.A.P.1997) (bankruptcy court had jurisdiction to enter contempt order even after case was closed); Aiello v. Providian Financial Corp. (In re Aiello), 231 B.R. 693, 706–707 (Bankr. N.D. Ill. 1999) (court had jurisdiction to hear adversary proceeding brought on behalf of class of debtors even though some of the debtors' cases had already been closed); In re Taylor, 216 B .R. 515, 521 (Bankr. E.D. Pa. 1998) (court had jurisdiction to order distribution of unclaimed funds remaining after conclusion of Chapter 13 case without reopening it).

Ransom, 2000 WL 33712560 at *3.

The decision in Ransom is instructive as, contrary to the Plaintiff's assertion, it had

procedural remedies available to it to preserve its ability to reach the merits of its

Complaint under 11 U.S.C. § 727(d)(1). For example, it could have filed a timely Complaint

and requested this Court to preserve the status quo pending the disposition of its appeal.

Alternatively, it could have requested an expedited determination of its appeal in view of

the § 727(e) deadlines. In short, its assertion that equitable tolling should apply lacks merit

because of its own "want of diligence." *See* In re Bevis, 242 B.R. at 808 (citing Holmberg v.

Armbrecht, 327 U.S. at 397).

Additionally, courts have rejected arguments such as the one made by the Plaintiff

that its Complaint is timely under § 727(e)(2) because the Debtor's case was improperly

closed and its Complaint is, in fact, timely because it was filed when the case was

reopened. In In re Abdelmassia, the court considered and rejected a trustee's arguments

that the limitations period in 11 U.S.C. § 727(e)(2) was never triggered because the debtor's

undisclosed assets were never fully administered, the case was not properly closed, and

that equitable tolling applied to toll the limitations period for the length of time that the

Debtor concealed his assets. 362 B.R. at 212-14.

In summary, the majority of courts holds that 11 U.S.C. § 727(e)(1) and (2) constitute

statutes of repose that are not subject to equitable tolling. *See, e.g.* DeAngelis v. Taylor (In

re Taylor), 449 B.R. 686,  690 (Bankr. E.D. Pa. 2011); In re Bevis, 242 B.R. at 810.

Additionally, the Plaintiff has failed to establish that it acted with the requisite diligence

and care either by filing a Complaint within one year of the discharge or the closing of the

case. *See* In re Runkle, 333 BR at 736; In re Ransom, 2003 WL 33712560 at *3.

24

With respect to the actual merits of the Plaintiff's claims under 11 U.S.C. § 727(d)(3) and (a)(6)(C), assuming for discussion purposes only that the claim could survive application of the statute of repose set forth in § 727(e)(2), the Court finds that the claim cannot withstand the Debtor's Motion to Dismiss.  In Merena v. Merena (In re Merena), 413 B.R. 792 (Bankr. D. Mont. 2009), aff'd, 2009 WL 4914650 (B.A.P. 9th Cir. Dec. 10, 2009), the court addressed arguments advanced by plaintiffs who contended that the debtor refused to answer one or some of their questions during a Bankruptcy Rule 2004 examination, warranting denial of her discharge.  The court held that "refusal to answer questions at a Rule 2004 examination ordered by this Court is not a refusal to answer a question ordered by the Court." 413 B.R. at 819 (citing Gore v. Kressner (In re Kressner), 206 B.R. 303 (Bankr. S.D.N.Y. 1997), aff'd 152 F.3d 919, 1998 WL 385956 (2nd Cir.1998)).  The court in Merena added:

> "Section 727(a)(6)(C) denies a discharge to a debtor who refuses to respond to a material question approved by the court or refuses to testify on any ground other than the properly invoked privilege against self-incrimination. This section applies when the debtor refuses to answer a "material question approved by the court."
>
> 'Court' means a judge, and not simply a trustee, United States trustee or other official. The debtor's refusal to answer *a question that has not been approved by the court* is not a basis for denial of a discharge. Thus, a refusal to answer questions in a creditors' meeting or a deposition is not grounds for denial of a discharge if, when the court subsequently approved the question, the debtor answers it. *If court approval is never sought, the debtor is not required to answer the question*."

In re Merena, 413 B.R. at 819 (emphasis supplied, citation omitted).

As in Merena, the Plaintiffs never sought approval of a question from this Court.

25

Thus, for purposes of Fed. R. Civ. P. 12(b)(6), the Plaintiff has failed to state a claim upon which relief can be granted as the Debtor's refusal to answer a question at a Bankruptcy Rule 2004 examination fails to give rise to a claim under 11 U.S.C. § 727(a)(6)(C). Because Count II fails as a matter of law to state a cause of action, and is time barred under § 727(e)(2), this Court need not address the Debtor's argument that the Plaintiff waived that claim by failing to preserve it on appeal.

The Court concludes that the BAP's opinion in which it  reversed this Court's decision denying the Motion for Entry of Order Reopening the Case was a pyrrhic victory for the Plaintiff. In view of the decisions issued by the  BAP in Gonsalves v. Belice (In re Belice), No. 10-030, 2011 WL 4572003 (B.A.P. 1st Cir. March 7, 2011), and Pelletier v. Donald (In re Donald), 240 B.R. 141 (B.A.P. 1st Cir. 1999), as well as numerous decisions from bankruptcy courts in the First Circuit, in particular, the frequently cited decisions in Hadlock v. Dolliver (In re Dolliver), 255 B.R. 251, 257 (Bankr. D. Me. 2000), and Dahar v. Bevis (In re Bevis), 242 B.R. 805, 809 (Bankr. D. N.H. 1999), coupled with the absence of language or instruction from the BAP in Andersen directing this Court to toll the statutes of repose established by § 727(e)(1) and (2), this Court must conclude that the BAP, in fact, made "no determination as to . . .  whether  . . .[the Plaintiff's]  . . .  action might be time-barred under the Bankruptcy Code." In other words, the numerous decision holding that § 727(e)(1) and (e)(2) are jurisdictional and not subject to equitable tolling compel this Court to rule in the Debtor's favor.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Debtor's Motion to Dismiss, which the Court has treated as a motion for summary judgment. The Debtor's Motion to Amend Answer is moot.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  November 21, 2011